**E. Theodore OVERGARD,**
**Plaintiff–Appellee,**
**Cross–Appellant.**

v.

**CAMBRIDGE BOOK COMPANY, an unincorporated division or trade name of Learning Trends, Inc., Defendant–Appellant, Cross–Appellee.**

Nos. 87–2799, 87–2830.

United States Court of Appeals,
Seventh Circuit.

Argued May 18, 1988.
Decided Sept. 23, 1988.

Kenneth A. Margolis, Dretzin, Kauff, McClain & McGuire, New York City, for defendant-appellant, cross-appellee.

Randall L. Nash, O'Neil, Cannon & Hollman, S.C., Milwaukee, Wis., for plaintiff-appellee, cross-appellant.

Before WOOD, Jr., and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

In this case, the defendant (Cambridge) appeals from the district court's entry of judgment on a jury verdict finding that the defendant willfully violated the Age Dis-

crimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA), in terminating the plaintiff's employment. The district court entered a supplemental judgment denying the defendant's motion for judgment notwithstanding the verdict and granting the plaintiff's application for attorney's fees. The plaintiff cross-appeals from the district court's judgment on the amount of damages. We affirm the judgment on the jury's verdict as to the defendant's violation of the ADEA, but reverse that portion of the judgment that deals with the defendant's willfulness, and reduce the amount of damages.

## I.  BACKGROUND

We view the facts and the inferences which arise therefrom in the light most favorable to the plaintiff, for whom the jury rendered its verdict. *Knapp v. Whitaker*, 757 F.2d 827, 843 (7th Cir.), *cert. denied and appeal dismissed*, 474 U.S. 803, 106 S.Ct. 36, 88 L.Ed.2d 29 (1985); *Fey v. Walston & Co.*, 493 F.2d 1036, 1044 (7th Cir.1974).

The defendant is in the business of publishing and selling books, video cassettes, and software programs for illiterate and functionally illiterate adults. It employs about forty people, of whom eight are sales representatives. The plaintiff was one of these eight salespeople. Each salesperson is assigned to a geographical region, which includes several states. The salesperson makes sales calls to various entities, including school districts, community colleges, correctional institutions, and some federally funded programs such as Job Corps. During these calls the representative shows the customer new Cambridge materials and provides instruction as to how these materials can most effectively be used. Unlike sales of conventional books for use in established curricula, which can be accomplished by matching a book with a course title, sales of adult education materials requires detailed demonstrations to the customers of how the materials will fill their needs. The goal is to encourage the customer to purchase an ever-broadening array of Cambridge products.

Cambridge pays each of its salespeople a salary that constitutes payment for base sales. A salesperson's base is derived from his or her sales in the previous year. The company sets a quota of anticipated sales above base for each salesperson, taking into account factors such as federal, state and local funding for adult education programs, existing market share, new products, price increases, and overall company growth. For sales over base, Cambridge pays a 6½ percent commission; for sales over quota, the commission is 10 percent.

The plaintiff was employed by Cambridge as a sales representative from 1971 through May 31, 1985. In 1971, he was asked to move from California, where he had been working for the defendant's predecessor, Learning Trends, Inc., to the midwest, where he would cover Wisconsin, Minnesota, and Iowa. In 1981, he was assigned five additional states: Illinois, Michigan, Ohio, Indiana, and Missouri. The plaintiff was the first full-time salesperson assigned by Cambridge to cover these states, and in his first two years he raised the base sales from $375,000 to over $750,000.

Because of the plaintiff's success in developing his territory, Cambridge asked him to give up three of his largest states: Indiana, Michigan, and Ohio. The plaintiff thereby relinquished over $300,000 in sales. No other Cambridge salesperson had been asked to give up territory.

The plaintiff's demonstrated ability to develop territory led Cambridge to assign him to three new states: Kansas, Nebraska, and Colorado. Again, the plaintiff was the first full-time sales representative to be assigned to these states. The plaintiff's ability to develop sales in these states was limited somewhat by their population, which was significantly less than that of Indiana, Michigan, and Ohio. The territory was also much larger and farther from the plaintiff's home in Wisconsin. The defendant wanted the plaintiff to concentrate his sales efforts in the three new states, and it hired a salesperson for the Chicago area so the plaintiff would be able to spend less

time there. Sales in Kansas, Nebraska, and Colorado increased by more than 140 percent between the 1983 and 1984 sales years. In 1985, sales increased somewhat over 1984 levels.

In the plaintiff's original territory of Illinois, Missouri, Wisconsin, Iowa, and Minnesota, sales declined in the period from 1982 to 1985. The price of materials increased from 5 percent to 6 percent per year. The plaintiff contends, however, that sales in his territory as a whole increased by nearly 15 percent. In the 1985 sales year, the plaintiff's sales were the third highest of any sales representative in the company. Nevertheless, on May 6, 1985, when the plaintiff was fifty-eight years old and the oldest of Cambridge's salespeople by several years, the president of Cambridge, Benita Somerfield, told the plaintiff that his employment was terminated effective May 31. He was replaced by a new salesperson who was thirty-nine years old and who had no previous experience selling adult educational materials, or books of any kind.

The plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC) in October of 1985. A representative of the EEOC allegedly told the plaintiff that the Commission would forward a copy of his charge to the appropriate state agency and that he did not need to do so himself. The plaintiff, therefore, did not file any charge with the state fair employment practices agency in either New York, where the termination occurred, or in any other appropriate state. 29 U.S.C. § 633(b). The plaintiff filed his complaint in state court in Dane County, Wisconsin, on April 1, 1986. The action was then removed to federal court. In its answer to the complaint the defendant raised the plaintiff's default in filing with the state agency as an affirmative defense.

On January 15, 1987, the defendant moved for summary judgment on various grounds, including the plaintiff's failure to file a charge with the appropriate state agency. The plaintiff opposed the motion, claiming that his default should be excused because he relied on the advice of an EEOC representative that the charge would be forwarded to the state agency. The district court denied summary judgment on March 2, 1987, finding that a genuine issue of material fact existed as to whether the court should waive the state filing requirement on equitable grounds.

On March 12, the plaintiff moved for a sixty-day adjournment of the trial to permit him to file his charge with the appropriate state agency. The district court entered an order March 25 denying the plaintiff's motion. The court, however, dismissed the action without prejudice, providing that once the plaintiff filed his charge with the appropriate state agency, he could move for reconsideration and the case would be set for immediate trial.

March 16, the plaintiff filed a charge of age discrimination against the defendant with both the Wisconsin and New York state agencies handling such complaints. On May 27, after sixty days had passed, the plaintiff moved for reconsideration of the March 25 dismissal, informing the court that the charges had been filed with the states and the prerequisites to suit under 29 U.S.C. § 633(b) had been fulfilled. The defendant objected on the grounds that the state filings were empty formalities. The court granted the plaintiff's motion on June 8, vacated the order of dismissal and scheduled the case for trial in June.

A jury found that the defendant had willfully discriminated against the plaintiff on the basis of age. Judgment was entered June 25. Damages were stipulated: $60,000 in back pay and $80,000 in front pay for future lost earnings.

## II. DISCUSSION

### A. *Issues*

The defendant first argues that the district court erred in failing to require the plaintiff to comply with the ADEA's mandatory procedural prerequisites to suit. The defendant next argues that there was insufficient evidence to support the jury's finding of age discrimination, and that the court therefore erred in denying the defendant's motion for judgment notwithstanding the verdict. Moreover, the de-

fendant contends that the trial court erred in failing to find that the defendant's decision to discharge the plaintiff was a legitimate exercise of business judgment. The defendant also asserts that the jury's finding that the defendant willfully violated the law was unsupported by the evidence. The plaintiff cross-appeals, contending that the court should have doubled a portion of the award to the plaintiff because of the jury's finding of willfulness.

## B. Procedural Prerequisites to Suit

■ The ADEA contains two mandatory administrative requirements that a claimant must satisfy before filing suit. A claimant must file a charge of discrimination with the EEOC. 29 U.S.C. § 626(d). And if the state in which the alleged discrimination occurred is a "deferral state," that is, if it has a state law prohibiting discrimination, then the claimant must also file a charge with the appropriate state agency. 29 U.S.C. § 633(b). The ADEA provides that a federal suit may not be brought until at least sixty days after the state filing, id., and the Supreme Court has found this prerequisite to be "mandatory, not optional." Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979).

This court previously has recognized that "[t]he ADEA is humanitarian legislation that should not be construed in a hyper-technical manner." Stearns v. Consolidated Management, Inc., 747 F.2d 1105, 1112 (7th Cir.1984); Husch v. Szabo Food Serv. Co., 851 F.2d 999, 1002 (7th Cir.1988). Because the statutory scheme of the ADEA is designed to allow the layperson to initiate the process without the assistance of attorneys, "it is particularly inappropriate to undermine the effectiveness of these statutes by dismissing claims merely because the victim of the alleged discrimination failed to comply with the intricate technicalities of the statute." Husch, at 1002; cf. Love v. Pullman Co., 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972) (Title VII case). Accordingly, we have found that the "requirement of proper administrative filing under the ADEA is not jurisdictional, but rather a condition prece-dent to suit." Smith v. General Scanning, Inc., 832 F.2d 96, 99 (7th Cir.1987); Stearns, 747 F.2d at 1111. It is not necessary that an ADEA plaintiff comply with the state time limitations to satisfy the ADEA's requirement of filing a state charge. Husch, at 1003; Smith, 832 F.2d at 98. However, "the complainant must at least initiate state proceedings." Husch, at 1003; Anderson v. Illinois Tool Works, Inc., 753 F.2d 622, 625 n. 3 (7th Cir.1985). It does not matter under the ADEA whether the EEOC charge is filed before, after, or during state proceedings in deferral states. Stearns, 747 F.2d at 1110.

The defendant suggests that the district court's action in dismissing the plaintiff's case, subject to reconsideration after the plaintiff satisfied the state filing requirements, cannot be squared with our decision in Smith. In Smith, the plaintiff filed a charge with the EEOC and the Wisconsin Department of Industrial and Labor Relations. The state agency rejected the plaintiff's filing for lack of jurisdiction because the cause of action had no connection with Wisconsin. The employer was located in Massachusetts and the plaintiff had been employed in Illinois. We found that no state had reviewed Smith's complaint, and that Smith was aware of this fact because the Wisconsin agency, the only state agency with which he had filed, had informed him that it lacked jurisdiction over his charge. Therefore, we held that the action should be dismissed for failure to satisfy the state filing requirement of 29 U.S.C. § 633(b). In so holding, however, we recognized that equitable grounds may have existed that favored tolling the filing requirement. We thus suggested that the plaintiff refile with the EEOC and a proper state agency, if he could prove equitable reasons for tolling the filing requirement. Smith, 832 F.2d at 100.

This case differs from Smith because the plaintiff did file with the appropriate state agencies. The defendant argues that the plaintiff's filings were not timely, but as we have noted, timeliness of the state filings, and the order between state filing and filing with the EEOC is not crucial. As to

the court's action in dismissing the action subject to reconsideration, we believe that it comports with the spirit of the Supreme Court's ruling in *Evans*. There, the Court allowed a plaintiff, who had failed to file a state complaint on the advice of a representative of the United States Department of Labor, to file with the state after he had commenced his federal action. The Court ruled that the federal suit should be held in abeyance until the state's sixty-day opportunity to rule on the complaint had passed. The Court found that there was no danger that plaintiffs would attempt to bypass state remedies, because there was no advantage to doing so. 441 U.S. at 764, 99 S.Ct. at 2075. Although the procedure followed by the district court differed somewhat from that suggested by the Supreme Court, the result is the same: the state filing requirements are satisfied, and the states have had an opportunity to pass on the plaintiff's charge. Therefore, we find that the plaintiff has adequately complied with the procedural requirements to suit under the ADEA.[1]

### C. *Sufficiency of the Evidence*

■ The defendant argues, despite the jury's verdict to the contrary, that the plaintiff failed to carry his burden of proof of discrimination, and that the court should have granted the defendant's motion for judgment notwithstanding the verdict. "We review a district court's denial of a motion for judgment notwithstanding the jury's verdict *de novo.*" *Bright v. Land O'Lakes, Inc.*, 844 F.2d 436, 441 (7th Cir. 1988). "We determine whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the party winning the verdict." *Christie v. Foremost Ins. Co.*, 785 F.2d 584, 585–86

(7th Cir.1986). In undertaking this evaluation, we will not reevaluate the credibility of witnesses, nor "otherwise consider the weight of the evidence." *Goldman v. Fadell*, 844 F.2d 1297, 1300 (7th Cir.1988).

The procedure parties must follow in most employment discrimination cases involves a three-pronged shifting burden, derived from Supreme Court cases such as *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "[T]he employee first has the burden of establishing a prima facie case of age discrimination," *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 17 (7th Cir.1987), by showing that "(1) he was in the protected class; (2) he was doing his job well enough to meet his employer's legitimate expectations; (3) in spite of his performance he was discharged; and (4) the employer sought a replacement for him." *Id.* at n. 5: *La Montagne v. American Convenience Prods.*, 750 F.2d 1405, 1409 (7th Cir.1984). If the plaintiff satisfies this burden, a presumption of discrimination is raised, and the defendant employer next has the burden of providing evidence of some legitimate reason for the plaintiff's termination. If the defendant meets this burden, the presumption is no longer considered, and the plaintiff then must show, by a preponderance of the evidence, that the defendant's proffered reasons are merely pretextual. *Graefenhain*, 827 F.2d at 18. The plaintiff may prevail in one of two ways: he may either directly persuade the trier of fact that the defendant was more likely motivated by a discriminatory reason than a legitimate one in firing him, or he may indirectly demonstrate that the defendant's proffered reason for the termination is not credible. *Id.* If the plaintiff can convince

---

**1.** Because of our finding that the plaintiff satisfied the procedural prerequisites to suit by filing his state charges after the dismissal of his suit, we have not considered the question whether the plaintiff attempted to comply with the prerequisites at any earlier time. We therefore grant the defendant's motion to strike the portion of the plaintiff's appendix that refers to a letter, not presented to the district court, from

the EEOC to the New York State Division of Human Rights. We decline to impose sanctions against the plaintiff for including it, however. We deny plaintiff's motion to enlarge the record to include an affidavit of an official of the EEOC's New York office, and decline to take judicial notice of the plaintiff's proffered certified mail receipt.

the trier of fact that the defendant did not act for the reason it offers as justification, then the defendant has not met its burden and the plaintiff may thus prevail. *Id.*

Although the defendant here suggests that the plaintiff was unable to make out a prima facie case, it does not press this argument, but instead moves directly to the question of whether the defendant articulated a legitimate reason for the plaintiff's termination. As we have previously held, "[a]fter a trial on the merits, 'disputes about the *prima facie* case fall away.'" *Kier v. Commercial Union Ins. Cos.,* 808 F.2d 1254, 1257 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987) (quoting *Morgan v. South Bend Community School Corp.,* 797 F.2d 471, 480 (7th Cir.1986)). Therefore, "[w]e need resolve only the ultimate question of whether there was sufficient evidence for a jury to conclude that age was a determinative factor in [the plaintiff's] discharge." *Kier,* 808 F.2d at 1257.

The plaintiff presented evidence that he had more sales each year than the majority of the other Cambridge sales representatives. He also had one of the largest sales territories to cover, and his territory was changed from established areas to undeveloped (in terms of sales) states. One of his largest selling states, Illinois, was subjected to significant funding cuts, which limited his ability to increase his sales volume there. Nevertheless, despite these difficulties, the plaintiff remained either the number two or three top-selling representative. Moreover, he was the only salesperson to consistently have over $500,000 in sales during his last four years with Cambridge. He achieved this level of sales even though, after the 1983 sales year, he gave up three of his four top-selling states.

The president of Cambridge, William Moore, testified that other, younger, salespeople had experienced declines or slow growth in sales but had not been fired. Moore also testified that between 1981 and 1983, sales in the plaintiff's territory increased by more than 100 percent, and between 1983 and 1984, the plaintiff's sales increased by approximately 15 percent. Moore agreed that plaintiff's sales also increased from 1984 to 1985.

We believe that based on this evidence, the jury could have found that the defendant's stated reasons for terminating the plaintiff, that his sales volume was too low, or that his sales were not showing sufficient growth, were pretextual. The plaintiff presented substantial evidence from which the jury could have found that the plaintiff's age was a determinative factor in the defendant's decision to terminate the plaintiff. *Kier,* 808 F.2d at 1257. Therefore, we find that the district court correctly denied the defendant's motion for judgment notwithstanding the verdict.

The defendant argues that its decision to discharge the plaintiff was a legitimate exercise of its business judgment. According to the defendant, Cambridge had established clear standards of performance, standards that it announced to the salespeople, and which the defendant did not meet. The assertion that the company set and announced standards does not end the inquiry, however. The jury still could have found that the company used these standards as a pretext to discharge the plaintiff, based on, among other things, the fact that they were not uniformly followed, and that younger people who did not meet the defendant's goals of increased growth were not fired; to the contrary, Moore testified that one salesperson whose sales declined by $100,000 received a promotion. The jury had a sufficient basis from which to find that the defendant's decision to discharge the plaintiff was not an exercise of legitimate business judgment.

### D. *Willfulness of the Violation*

Liquidated damages are available to plaintiffs only in the case of willful violations of the ADEA. 29 U.S.C. § 626(b). The Supreme Court has held that a plaintiff may demonstrate that an ADEA violation was willful if the plaintiff proves that the employer knew that its conduct violated the Act, or showed reckless disregard for whether its conduct was prohibited under the ADEA. *Trans World Airlines v. Thurston,* 469 U.S. 111, 126, 105 S.Ct. 613,

624, 83 L.Ed.2d 523 (1985). The Court explicitly rejected a standard that would render an employer liable for liquidated damages if it was simply aware of the existence of the ADEA. "As employers are required to post ADEA notices, it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability." *Id.* at 128, 105 S.Ct. at 625. The Court found that Congress had clearly intended a two-tiered scheme of liability for violations under the Act, and it declined to rule in a manner that would frustrate that purpose. *Id.*

The jury found that the defendant's violation of the ADEA was willful. The district court agreed, finding that

> [t]he positive letter of recommendation for plaintiff by defendant's president, Benita C. Somerfield, and plaintiff's total sales figures when compared to the sales of others is sufficient evidence to support the jury's finding that plaintiff was doing the assigned job well enough to meet the employer's legitimate expectations.... [T]he Court believes that this evidence, together with Somerfield's knowledge that the defendant's conduct was prohibited by ADEA and that plaintiff had informed her that he would commence suit for age discrimination if he was fired, is sufficient to support the jury's finding that the defendant's violation of the ADEA was willful.

*Overgard v. Cambridge Book Co.,* No. 86–C–347–S, slip op. at 4 (W.D.Wis. Oct. 7, 1987) (memorandum and order denying defendant's motions for judgment notwithstanding the verdict or a new trial). To the contrary, this evidence does not support a finding of willfulness. The plaintiff did not present any evidence that the defendant either knew, or showed reckless disregard for the possibility that its conduct was violative of the ADEA.

The court's reliance on the fact that the plaintiff informed Somerfield that he would bring suit for age discrimination is misplaced. The plaintiff made this statement after Somerfield told him of his discharge, and, therefore, after the defendant had violated the Act. The determination of wheth-er an employer violated the ADEA with knowledge or reckless disregard turns on the employer's mental state when the alleged violation was committed. The plaintiff's post-violation statement thus provides no support for the argument that the defendant had acted in a reckless manner when it committed the violation.

The district court also found that Somerfield knew that Cambridge's conduct was prohibited by the Act. The plaintiff presented no such evidence, however. Somerfield did not testify on the subject, and Moore's testimony showed only that he knew of the existence of the law against age discrimination, not whether he had any knowledge that the company's conduct was in violation of that law. As the Supreme Court held in *Thurston,* mere awareness of the existence of the ADEA cannot sustain a finding of a willful violation of the Act. 469 U.S. at 128 n. 22, 105 S.Ct. at 625 n. 22. *See also McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 117 (7th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

Somerfield's letter of recommendation for the plaintiff and the plaintiff's sales volume do not provide support for the jury's finding of willfulness. The letter of recommendation provides little evidence of anything. In its entirety, the letter states that

> Ted Overgard represented Cambridge Book Company in the Midwest over the past 4½ + years that I have been company president. He is a man of integrity with a real commitment to giving his customers the best possible service and his customers think that he's terrific. The territory he covered is a very large one and Ted spent many weeks, consecutively, on the road without complaint. He's a hard worker and a respected member of the Midwest adult education community.
>
> It has been a pleasure working with him.

Although the plaintiff argues that this letter, when considered in connection with Somerfield's answers on cross-examination, is "without question proof that her true intentions were to fire [plaintiff] because of

his age," the letter cannot support any such inference. The letter does not address the question of whether the plaintiff voluntarily quit or was fired. It does not touch at all on the reason why he was terminated. Somerfield testified that she wrote the letter to reflect what she believed was true—that the plaintiff was a very fine person. She was careful not to mention her perceptions about his ability to sell. There is nothing in the letter that would give rise to any inference that the plaintiff was discharged in willful violation of the ADEA.

Somerfield's testimony was not inconsistent with the letter; she testified that she believed that the plaintiff was a fine person, but that he was not selling enough. Although the district court, and apparently the jury, believed that Somerfield's and Moore's testimony was less than forthright, leaving the court with the impression that there was something to hide, the plaintiff has not offered any kind of proof that what the defendant may have been hiding was the knowledge that it was violating the ADEA through its conduct. We therefore find that the violation of the Act was not willful.

The district court entered judgment pursuant to a stipulation between the parties that $30,000 in back pay and $80,000 in front pay was appropriate. The district court then doubled the back pay award to $60,000 pursuant to 29 U.S.C. § 626(b) in response to the jury's finding that the violation was willful. Because we find that the violation was not willful, we reject the plaintiff's contention that the front pay award should have been doubled as well, and instead reduce the damages award to the stipulated $30,000 for back pay and $80,000 in front pay.

### III. CONCLUSION

We affirm the jury's finding that the defendant discharged the plaintiff because of his age. We find, however, that the evidence does not support the jury's finding that the defendant's violation of the ADEA was willful. We therefore have reduced the damages award by the $30,000 that represented liquidated damages under 29 U.S.C. § 626(b).