661 F.2d 90
 26 Fair Empl.Prac.Cas. 1615,
27 Empl. Prac. Dec. P 32,170,
2 Employee Benefits Ca 1941
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellee,
v.
AIR LINE PILOTS ASSOCIATION INTERNATIONAL AND NORTHWEST
AIRLINES, INC., Appellants.
 Nos. 80-1792, 80-1850.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 18, 1981.
Decided Oct. 7, 1981.
 
 Leroy D. Clark, Gen. Counsel, Philip B. Sklover Acting Associate Gen. Counsel, Vincent Blackwood, Asst. Gen. Counsel, Marcia B. Ruskin, Atty. (argued), Washington, D. C., for E.E.O.C.
 Michael E. Abram, Jay P. Levy-Warren (argued), Cohen, Weiss & Simon, New York City, Robert V. Atmore, Lindquist & Vennum, Minneapolis, Minn., for defendant-appellant, Air Line Pilots Association, International.
 Dorsey, Windhorst, Hannaford, Whitney & Halladay, David Ranheim, Robert Bayer, Minneapolis, Minn., for appellant Northwest Airlines, Inc.
 Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 The Equal Employment Opportunity Commission brought this suit on behalf of Northwest Airline pilots entering their year of normal retirement,[1] claiming that a collective-bargaining agreement discriminatorily gives age-60 pilots less favorable vacation benefits than younger retiring pilots. The defendants are Northwest Airlines, Inc., the employer, and Air Line Pilots Ass'n, Int'l (ALPA), the union representing Northwest's pilots. The case was brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34. The District Court held that the contract provision at issue violates the ADEA and enjoined its enforcement.[2] Seven individual plaintiffs were awarded damages. We hold that plaintiff failed to make a prima facie case of discrimination and therefore reverse.
 
 
 2
 During 1978 ALPA and Northwest negotiated a collective-bargaining agreement for Northwest pilots. Section 7 of that agreement governs bidding procedures for accrued vacation days. Basically, Northwest pilots must take vacation days earned in a calendar year sometime within the next calendar year. In November of each year the pilots bid for their next year's vacation on a seniority basis. Accrued vacation days not taken within the next calendar year are lost except under special circumstances not relevant here. Pilots continuing in active employment throughout the calendar year may not receive lump-sum payments for accrued vacation days in lieu of actually taking the vacation.
 
 
 3
 Section 7(B)(1) of the collective-bargaining agreement governs vacation bidding for pilots who will reach their 60th birthday during the next calendar year and thus retire.[3] Under Section 7(B)(1) pilots retiring at the normal required age of 60 must bid a portion of their accrued vacation time to be actually taken prior to retirement. As the District Court explained it:
 
 
 4
 Section 7(B)(1) requires age 60 pilots to take, prior to retirement, the portion of their vacation earned during their 59th year equivalent to the amount of vacation they will accrue prior to retirement during their 60th year.
 
 
 5
 489 F.Supp. at 1005 (footnote omitted). For example, a senior pilot with at least 25 years of service would accrue 44 vacation days a year. If his normal retirement date is April 1, 1980, he would end his employment with 44 days accrued from 1979, and 11 days accrued from 1980 (January 1 through March 31). Since it can be predicted, in November of 1979, when vacations are bid for 1980, that he will work only three months in 1980, he is required to bid that percentage (1/4) of his accrued 1979 vacation days to be taken before April 1, 1980, his normal retirement date. Thus he is required to bid for 11 days to be actually spent on vacation before April 1, 1980. The rest of his accrued 1979 days (44 - 11 = 33) and all his accrued 1980 days (11) will be paid to him in a lump sum at retirement.
 
 
 6
 Under previous agreements, retiring pilots were allowed to schedule all vacation days for dates after their normal retirement date and, therefore, to collect for all accrued days in a lump sum upon retirement. Under this older system, retiring pilots were allowed to avoid entirely the rule that vacation days must be taken in the calendar year after they accrue. The new rule reduces this benefit partially by treating normal retiring pilots exactly like pilots who are expected to serve for the entire year. Both groups must bid for vacation leave proportionate to their anticipated period of service in that year. The age-60 pilots still have the added benefit of receiving a lump-sum payment for accrued days left from the previous year and all days accrued in the year they turn 60.[4]
 
 
 7
 The section 7 rule requiring age-60 pilots to bid for accrued vacation time proportionate to their expected length of service in the next year does not apply to pilots retiring before their normal retirement date. For that reason, a younger pilot could secretly intend to retire or resign some time during the next year and in November bid all his vacation time to fall after his intended retirement date. He would then be able to collect all his accrued vacation pay in cash. The parties stipulated, however, that early retirement and resignation could not practically be planned and are usually the result of medical or disciplinary problems. Early retirement by Northwest pilots is infrequent; from zero to three pilots have retired early in each of the past five years. Only 19 pilots retired or resigned early, with unused vacation credits, between 1970 and 1979. The parties stipulated that Northwest had never received notice of any voluntary retirement or resignation planned for the next calendar year prior to the award of bids for vacation time to be taken in that calendar year. The District Court characterized early retirements as "rare, unpredictable, and sporadic." 489 F.Supp. at 1007. This "loophole," which would, under certain circumstances, allow the taking of all accrued vacation pay in cash, could also be used by an age-60 pilot who retires during the calendar year he turns 60 but before his normal retirement date.
 
 
 8
 The District Court found that a prima facie case of discrimination had been established on the theory that
 
 
 9
 those pilots (age-60 retiring pilots) cannot obtain a lump sum payment for all accrued vacation at their retirement date; and younger pilots who decide to retire early can, if they plan their early retirements sufficiently in advance, obtain a lump sum payment for all their accrued vacation at their retirement.
 
 
 10
 489 F.Supp. at 1006. We respectfully disagree. The District Court compared two groups of pilots, which it designated as "age 60 pilots" and "younger retiring pilots." The problem with that comparison is that the two groups are not mutually exclusive. An age-60 pilot who retires during the calendar year he turns 60 but before his normal retirement date would be entitled to receive all accrued vacation days in a lump sum cash payment. Depending upon his birthday,[5] the age-60 pilot could plan his early retirement to allow him to collect most or all of his accrued vacation pay in cash. This is exactly the same benefit open to the younger retiring pilot, if he plans ahead when he bids in November for the next year's vacation days. Thus, the age-60 pilots are actually "younger retiring pilots" for purposes of this comparison if they retire anytime before their normal retirement date. The two classes, then, are not age-60 pilots and younger retiring pilots, but pilots who retire on their normal retirement date and all other retiring pilots, some of whom may be 60 years old. This classification does not amount to discrimination based on age.
 
 
 11
 We also find the comparison inappropriate for another reason. The discrimination, if there is any, occurs in November when the pilots bid for the next year's vacation days. That is the time when the age-60 pilots are required to bid a percentage of their anticipated vacation for dates before their normal retirement date. At that time, there is no ascertainable class of younger retiring or resigning pilots. Early retirement is "rare, unpredictable and sporadic." 489 F.Supp. at 1007. There is no way to know which pilots, if any, will develop medical problems or encounter disciplinary problems in the next calendar year.[6] The hypothetical younger pilot who secretly plans to retire within the next year is, as far as this record shows, an imaginary person whose existence has not been shown. There was no evidence that any early retiring pilot has ever used the November bidding system to maximize his accrued vacation payment.
 
 
 12
 What appears to be a discriminatory provision of the collective-bargaining agreement requiring age-60 pilots to take a certain number of vacation days before their retirement date is, in our opinion, really only a provision that puts all pilots under the same rule as of the November bidding date. Every pilot, on that date, is required to bid for vacation leave in the next calendar year proportionate to his anticipated period of service in that year. The fact that a younger pilot may become ill and retire sometime during the year and be paid whatever accrued vacation compensation he is owed as of that date does not amount to discriminatory treatment of age-60 retiring pilots, because exactly the same thing can happen to them.
 
 
 13
 At oral argument counsel for the Commission stated that if Section 7(B)(1) were drafted to state that everyone must take vacation pro rata to time expected to work, it would be lawful. Counsel then admitted that such a rule would have the same real effect as the rule in issue here, since the age-60 pilots have the same chance to form a secret intention in November to retire early the next year as the younger pilots do.
 
 
 14
 Discriminatory or disparate treatment occurs where "(t)he employer simply treats some people less favorably than others" because of a prohibited criterion. Where a neutral employment practice "fall(s) more harshly on one group than another" disparate impact occurs. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Neither is the case here.[7] The judgment is reversed, and the cause remanded with directions to dismiss the Commission's complaint.
 
 
 15
 It is so ordered.
 
 
 
 [1]
 The age-60 retirement date for commercial airline pilots flying passenger planes is imposed by Federal Aviation Agency regulations, 14 C.F.R. § 121.383(c), and is not challenged here. These pilots must quit flying the day before their 60th birthday
 
 
 [2]
 The District Court opinion is reported at 489 F.Supp. 1003 (D.Minn.1980)
 
 
 [3]
 Section 7(B)(1) reads as follows:
 During each calendar year, each pilot shall take a vacation equal to the number of full days accrued to his vacation account at the end of the previous calendar year, except that during the calendar year in which his normal retirement date will occur, a pilot must take, prior to such date, a vacation at least equal to his vacation credit to be accrued in such year.
 
 
 [4]
 A pilot's normal retirement date is the first day of the month after his 60th birthday. Since a pilot must stop flying on his 60th birthday, a normal retiree can bid some or all of the required pre-retirement vacation in the "slot" between his 60th birthday and the first day of the next month and increase his earnings further. Assuming that he had 25 years of service and accrues 44 vacation days a year, the age-60 pilot is guaranteed a cash payment for 44 days of vacation pay. Use of the slot days between his birthday and the first day of the next month would increase this amount
 
 
 [5]
 If his birthday does not come too early in the year, he would have enough work days left in his 60th calendar year to bid for his entire vacation after his secretly anticipated early retirement date. As with the younger retiring pilots, there is no reason to believe that any pilots would actually adopt such a stratagem, but the loophole is just as available to the pilots who are approaching normal retirement age
 
 
 [6]
 These pilots, of course, could not necessarily take advantage of the supposed benefit of maximizing their cash vacation payment. The District Court found that the younger retiring pilots could take advantage of this benefit only if they "plan their early retirements sufficiently in advance." 489 F.Supp. at 1006. A pilot who becomes ill and retires early may have just come back from vacation and get no accrued payment from the previous year at all. He will, of course, receive any vacation pay accrued in the current year, as will the age-60 retiring pilot
 
 
 [7]
 Compare Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 921 n. 6 (2d Cir. 1981) ("The issue in an age discrimination case is whether the employer is treating some people less favorably than others because of their age.") For reasons we have explained, we see no differential treatment on the facts of this case