EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

LOCAL 350, PLUMBERS AND
PIPEFITTERS, Defendant.

No. CV–N–89–359–ECR.

United States District Court,
D. Nevada.

Jan. 4, 1994.

Robert T. Olmos, Ralph D. Fertig, Daniel C. Preciado, E.E.O.C., Los Angeles, CA, for plaintiff.

William J. Flynn, San Francisco, CA, Michael Langton, Reno, NV, for defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

This case arises out of Local Union 350's (the "Union") previous practice of refusing to refer any members who receive pensions from its hiring hall to prospective employers. After the Ninth Circuit reversed this Court's finding that this policy did not constitute age discrimination, 998 F.2d 641 (1992), the Union changed its policy to require a retiree who wishes to register on the "out of work" list to fill out forms advising the pension plans of that intent. The forms are then forwarded to the plans, the retiree is immediately registered, and the plans take whatever action is appropriate under the terms of each plan. It is not known if the EEOC considers the current system discriminatory.

Now before this Court is a motion for partial summary judgment filed on behalf of Local # 350 (document # 39). The Union claims that in an age discrimination claim filed under the Age Discrimination in Employment Act ("ADEA"), a union may not be liable for money damages, including back pay. The Union argues that partial summary judgment should be granted so that any judgment against Local # 350 will not include payment of money and that any remedy against the union is limited to injunctive relief.[1] Plaintiff (EEOC) opposes this motion.

In 1967 Congress passed the Age Discrimination in Employment Act to help secure employment opportunities for the elderly. Though by its terms the Act clearly prohibits unions as well as employers from discrimination on the basis of age, it does not explicitly provide that unions may be held liable for damages. Federal courts have diverged in determining union liability under the Act. Some courts have denied liability altogether, construing the enforcement section of the ADEA to incorporate the substantive provisions in the Fair Labor Standards Act ("FLSA") that limits liability to employers. 29 U.S.C. §§ 201, 216(b); *Air Line Pilots Association v. Trans World Airlines*, 713 F.2d 940 (2d Cir.1983) *aff'd in part, rev'd in*

part on other grounds sub nom., *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (the union and employer negotiated an age based promotion policy that discriminated against older pilots. The court found that the union had violated the ADEA, but refused to hold it liable for monetary damages. However, the effect of this holding was blunted by the court's finding that back pay was an equitable remedy which could be recovered from the union) Larson, 1 *Employment Discrimination* § 42, 9–3 (1993); *See also Neuman v. Northwest Airlines*, 28 F.E.P. 1488 (N.D.Ill. 1982).

Other courts have concentrated on the broad language in the ADEA authorizing courts to "grant such legal or equitable relief as may be appropriate to effectuate the purposes of [the Act]". 29 U.S.C. § 626(b). Reasoning that liability for damages will deter discrimination and thus 'effectuate' the goals of the Act, some courts have imposed monetary liability on unions violating the ADEA. *See U.S. Equal Employment Opportunity Commission v. Air Line Pilots Ass'n*, 489 F.Supp. 1003 (D.Minn.1980) (The union negotiated a contract provision giving pilots nearing retirement age less favorable vacation benefits than younger pilots. The court ruled that the union had violated the ADEA and held it liable for lost compensation) *reversed on other grounds, EEOC v. Air Line Pilots Association Intern*, 661 F.2d 90 (8th Cir.1981).

The lack of legal consensus or binding precedent, the hybrid statutory scheme of ADEA, and the specific facts of this case, make the issue of whether or not Local # 350 can be held liable for money damages to the EEOC a complex one. The fact that EEOC is not a private party plaintiff and the fact that the union was acting as a quasi employment agency via it operation of a hiring hall are two factors that deserve preliminary consideration.

Section 7(b) of the ADEA, 29 U.S.C. § 626(b) expressly authorizes monetary relief. That section provides:

---

1. Assuming that the EEOC does not oppose the Union's new policy (and therefore not seek any injunctive remedy), the entire case may be resolved on this issue alone.

In any action brought to enforce this chapter the court shall have the jurisdiction to grant such legal or equitable relief as may be appropriate to effectuated the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

However, section 7(b) of the ADEA, 29 U.S.C. § 626(b) further incorporates the procedures and remedies available under the Fair Labor Standards Act ("FLSA") specifically 29 U.S.C. §§ 216 and 217. Section 216 is the provision allowing damage actions. Pursuant to § 216(b) damage actions are limited to actions brought against "any employer" and "employer" is defined under the FLSA specifically to exclude unions. 29 U.S.C. § 203(d). *See Air Line Pilots Association, supra.*

■ Plaintiff in this case claims that this action is being brought under § 216(c) which provides, according to plaintiff, for actions brought by the government. This section states that: ". . . the Secretary of Labor may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages." Plaintiff claims that this section is to be broadly applied to all government plaintiffs, not only the Secretary of Labor. Such contention is somewhat convincing in the case at hand due to the fact that enforcement authority of the ADEA was transferred from the Department of Labor to the EEOC through the Reorganization Plan No. 1 of 1978 which was ratified by P.L. 98–532. While plaintiff's reasoning is sound in this regard, the statute has not been amended to reflect that change and even the newly amended § 216(c) refers to the Secretary of Labor, not the EEOC, or any other governmental agency as capable of bringing such a suit for damages. Furthermore, there is no reason apparent to this Court as to why a different remedy should be available to the government plaintiffs as opposed to private parties. The argument that the EEOC is designated as the enforcer of the act and should be treated differently is not persua-

sive. Individuals, pursuing their own interests, are significant in serving as the catalysts for the enforcement of labor laws. This Court declines to find monetary liability against the union due to the mere fact that a government agency serves as the plaintiff in this case. This distinction is meritless and the Court's ruling (discussed below) is based on a more reasonable analysis.

■ The Court further rejects plaintiff's argument that the EEOC is an employment agency in its referral of workers for jobs and as such is independently liable for damages. First, Local # 350's Hiring Hall is not "an Employment Agency under the ADEA. The ADEA maintains a clear distinction between Labor Organization and "Employment Agencies." The Act defines a "labor organization" as:

> . . . a labor organization engaged in an industry affecting commerce, and any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international organization. 29 U.S.C. § 630(d).

The term "employment agency." on the other hand, is defined by the ADEA to mean:

> . . . any person regularly undertaking with or without compensation to procure employees for an employer and includes an agent of such a person; but shall not include an agency of the United States. 29 U.S.C. § 630(c).

The fact that employment agencies and labor unions are different is made apparent by the fact that the ADEA explicitly recognizes the fact that "labor organizations" operate hiring halls:

> A labor organization shall be deemed to be engaged in an industry affecting commerce if (1) it maintains or operates a hiring hall

or hiring office which procures employees for an employer or procures employees to work for an employer ... 29 U.S.C. § 630(e).

Thus, while the ADEA provides that an employment agency "regularly undertakes .. to procure employees," it also provides that a labor organization may act to "procure employees opportunities to work for an employer." Unions which operate hiring halls are still "labor organizations" under the ADEA, regardless of the fact that employment agencies procure employees for an employer. A labor union hiring hall procures jobs for its members; its hiring hall function is not intended to aid employers, it is intended to aid its members. This court readily recognizes the distinction between the two.

Moreover, the EEOC alleged in its complaint that Local 350 is a labor organization "within the meaning of Section 11(d) and (e) of the ADEA, 29 U.S.C. § 630(d) and (e)." The EEOC cannot amend its complaint at this late stage merely by alleging that what was once a labor organization is now somehow transformed into an employment agency pursuant to Section 11(c).

■ Despite this Court's rejection of plaintiff's arguments regarding plaintiff as an employment agency or a government plaintiff entitled to additional remedies, the Court does find that the ADEA should be interpreted to allow backpay awards against unions in enforcement actions. No Court that has faced the issue of union liability for damages under the ADEA has given the question the careful consideration it deserves or that this case demands.

Courts denying union liability have rigidly interpreted the "amounts" owing provision in § 7(b) of the ADEA to require full incorporation of § 16(b) of the FLSA which limits liability to employers. This construction of the Act ignores the selective incorporation notion advanced by Congress. It also ignores the difference in the purposes of the two statutes (ADEA and FLSA) and, as a result, hinders the effectuation of the ADEA's objectives. Courts imposing monetary liability on unions have cited the broad remedial provision in § 7(b) as the basis for their decision. This interpretation of § 7 is a defensible reading of the text, but it leaves the courts open-ended discretion to fashion limitless remedies under the Act. Neither approach produces an analytical framework that adheres to the text, comports with the legislative history, and furthers the purposes of the statute. K.L. Peck, *Union Liability under the ADEA,* 56 U.Chi.L.Rev. 1087 (1989).

The statutory framework of the ADEA, interpretation of the FLSA, and federal labor law all argue in favor of union liability. First, the language of the ADEA, as discussed above, specifically prohibits labor unions from engaging in discriminatory conduct. A union cannot "cause or attempt to cause" an employer to discriminate against an employee on the basis of age. 29 U.S.C. § 623(c)(3). Congress stipulated that the Act be enforced in accordance with the powers, remedies, and procedures of selected section of the FLSA. However, modifications have been made for the remedial framework of the FLSA to suit those problems peculiar to age discrimination.[2] The most important modification of the FLSA is that Congress included the following provision in § 7 of the ADEA: "In any action brought to enforce this [Act] the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of [the statute] ..." 29 U.S.C. § 626(b).

As discussed, Section 16(b) of the FLSA states that any employer found in violation of the statute will be held liable, labor organizations are explicitly excluded from the statutes definition of employer. In contrast, Section 7(b) of the ADEA contains no express limitation of liability to employers. But because that provision states that the Act shall be enforced in accordance with the

---

**2.** For example: (1) ADEA requires that private litigants notify the Secretary 60 days before initiating the lawsuit so that the secretary has the opportunity to eliminate the discrimination through conciliation, conference and persuasions. 29 U.S.C. § 626(b); (2) ADEA enforcement scheme employs a modified version of the FLSA's liquidated damages provisions—liquidated damages are available only for "willful violation" under ADEA 29 U.S.C. § 626(b).

"powers, remedies, and procedures of the FLSA," court have disagreed over whether the ADEA remedial provisions do in fact apply to unions. The legislative history of the acts argue that it does not. First, the two acts were created in different eras for different purposes. The ADEA was passed in 1967 and adopted the FLSA remedial scheme which would be efficient and easy to administer in that it was already in place. Moreover, the legislators creating ADEA were aware of and recognized that unions were also part of the problem. The FLSA on the other hand was a pro-labor New Deal measure passed in 1937. The FLSA established a minimum wage and maximum hour limit to benefit employees of certain industries and was passed long before labor unions became a moving strength. In at least one commentator's view, the historical development of the labor movement suggests that the FLSA was not applied to unions because of their weakness at the time the statute was drafted. By the time the ADEA was passed, union power had increased considerably, and their capacity for abuse had grown accordingly. Thus, unlike the FLSA, the ADEA was drafted to handle misconduct by unions as well as employers. K.L. Peck, *Union Liability under the ADEA,* 56 U.Chi.L.Rev. 1087 (1989)

■ Pursuant to federal labor law, unions have a duty of fair representation under which they can be held accountable for discriminatory practices. *Steele v. Louisville & N.R. Co., Railroad,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); *Woods v. Graphic Communications,* 925 F.2d 1195 (9th 1991). Unions that discriminate on the basis of age are held financially responsible for their action under the duty of fair representation. To make enforcement under ADEA inconsistent with this body of law is illogical. Federal labor law holds unions fully responsible for their discriminatory conduct. In a duty of fair representation action unions are generally held liable for discrimination against employees in a bargaining unit. *Wallace Corp. v. Labor Board,* 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216 (1944); *Ford Motor Company v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). If a union has participated in the negotiation of a discriminatory collective bargaining agreement the courts will hold the union jointly and severally libel for all the damages. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Ironically, a plaintiff in a duty of fair representation action is not required to notify the EEOC before proceeding, thus to make that the only avenue to receive damages by pass the conciliatory processes provided for in ADEA.

■ This Court finds that the "amounts owing" provision in section 7(b) of the ADEA does not require wholesale incorporation of section 16(b) of the FLSA. The provision requires the selective incorporation of the FLSA's limited remedies into the ADEA. The remedies specified in the FLSA "unpaid minimum wages and paid overtime compensation" only compensate the plaintiff for economic losses. The FLSA does not allow other compensator damages such as relief for pain and suffering or punitive damages. This court is sensitive to the potential hardship on the collective interest of innocent members (of a union) if liability is not restrained. Under the ADEA a defendant is limited to compensating plaintiffs for economic losses only. However, ANY party whose conduct is proscribed by the substantive provision of the Act may be required to pay for the pecuniary injuries they cause. This interpretation of the ADEA is consistent with other provision of the Act (e.g. the idea that the Secretary can bring a claim for damages and the language stating that all equitable and legal remedies are available), federal labor law, and the historical context of the acts.

The ADEA is the exclusive statutory remedy for age discrimination. The purposes of the ADEA is to prohibit and deter arbitrary age discrimination emphasizing the use of conciliation and persuasion where possible. Refusal to impose monetary liability on discriminatory unions does not further these purposes. Imposing limited financial responsibility on Local 350 for its discriminatory conduct may cause the union to internalize the cost of its discrimination and encourages it to assign adequate importance to the eradication of age discrimination in union activi-

ties.[3] Liberal construction of remedial provisions as adopted from an existing bureaucracy (i.e. the FLSA remedial scheme) is compelling particularly when injured plaintiff possess no alternative statutory routes to recovery. Discriminatory actions by unions can seriously affect a worker's ability to make a living. The Courts and ADEA are both concerned with fully compensating victims of discrimination and with deterring union misconduct, should such occur.

IT IS, THEREFORE, HEREBY ORDERED that defendants motion for partial summary judgment (document # 39) is DENIED.

---

**3.** The court notes that the damages in this case will be difficult to assess in that it can only be shown that the opportunity to work was lost, not actual wages.