Donald OVERLIE, Keith Bangs, Doreen Bogen, Norman Jansen, Stephen Knudsen, Jean Krause, Joyce Krohnberg, Robert Maki, Judith Morrison, Roger Reis, Bonnie Rennpferd, Nels Thompson, Kermit Urbain and Jerry Jetah, Plaintiffs,

v.

OWATONNA INDEPENDENT SCHOOL DISTRICT NO. 761, Defendant,

v.

Owatonna Education Association, Third–Party, Defendant.

No. CIV. 03–5288DSD.

United States District Court, D. Minnesota.

Oct. 21, 2004.

---

John A. Fabian III, Esq., Adam A. Gillette, Esq., and Nichols, Kaster & Anderson, Minneapolis, MN, for plaintiffs.

Amy Mace, Esq., Stephen G. Anderson, Esq. and Ratwik, Roszak & Maloney, Minneapolis, MN, for defendant.

Harley M. Ogata, Esq., Education Minnesota, St. Paul, MN, for third-party defendant.

## ORDER

DOTY, District Judge.

This matter is before the court upon plaintiffs' motion for partial summary judgment, defendant's motion for summary judgment and third-party defendant's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiffs' motion in part, denies defendant's motion and grants third-party defendant's motion.

## BACKGROUND

This is an employment discrimination action under the Age Discrimination in Employment Act of 1967 ("ADEA"),[1] and the Minnesota Human Rights Act ("MHRA").[2] Plaintiffs are retired teach-

---

1. ADEA provides that "[i]t shall be unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employ-

ment, because of such individual's age ...." 29 U.S.C. § 623(a)(1).

2. MHRA provides that "[e]xcept when based on a bona fide occupational qualification, it is

ers, formerly employed by defendant Owatonna Independent School District (the "District"). Third-party defendant Owatonna Education Association (the "Union") is the exclusive representative for a bargaining unit of public school teachers that included plaintiffs. All plaintiffs retired under either the 1997–1999 or 1999–2001 Master Agreement ("collective bargaining agreements" or "CBAs") between the District and the Union. Both CBAs contained the same early retirement incentive program ("ERIP"), which allowed eligible teachers to receive additional benefits upon retirement. After retiring, plaintiffs brought this suit in September 2003, alleging that the ERIP discriminated against them based on age and therefore violated the ADEA and the MHRA.

According to the ERIP, a teacher retiring between the ages of 55 and 64 with at least 10 years of teaching experience in the District can receive pay for unused accumulated disability leave. (*See* Gillette Aff. Ex. 2 at 23.) At 55 years of age, an eligible teacher receives the greatest early retirement benefit of up to 139 days' pay for accumulated leave. (*Id.* at 23.) The maximum benefits decline each year after age 55 by 13 days of accumulated leave. (*Id.* at 23.) For example, an eligible 56–year–old retiree can receive up to 126 days' pay, a 57–year–old can receive up to 113 days, and so on through age 64, when a retiree can receive up to 22 days' pay. (*See id.* at 23.) At or after age 65, a retiree receives no early retirement benefit. (*Id.* at 23.)

According to Linda Skrien, the Director of Human Resources for the District, and Jeff Williams, the Union president, the ERIP provided declining benefits because it was intended to subsidize health insurance until Medicare was available at age 65. (*See* Skrien Aff. ¶ 10; Williams Dep. at 12.) The District and the Union discussed the legality of the ERIP while negotiating the 1999–2001 Master Agreement. (*See, e.g.,* Gillette Aff. Ex. 7 at 4.) The Union expressed concern that the ERIP violated the ADEA, whereas the District maintained that relevant caselaw did not indicate an ADEA violation. (Williams Dep. at 26–27, 36–37.) Nonetheless, the District acknowledged that the ERIP should be looked at "in the long run," but that any modifications would likely not occur until the 2001–2003 agreement. (*See* Gillette Aff. Ex. 7 at 4.) Throughout the negotiations involving the ERIP, the District's legal counsel served as spokesperson for the District's position. (*See id.* Ex. 8; Williams Dep. at 37, 40.)

During negotiations, both the Union and the District suggested an amended ERIP that would not decrease benefits based on age. The Union proposed a benefit of up to 139 days' pay for accumulated leave for all eligible retirees, regardless of age. (Gillette Aff. Ex. 6.) The District proposed that retirees with 30 years of service receive up to 100 days' pay, with 10 additional days of pay for each year of service past 30 years. (*See* Gillette Aff. Ex. 9.) The Union and the District did not agree on a new ERIP provision, however, and the 1999–2001 Master Agreement remained unchanged in that respect. (*See id.* Ex. 2 at 23.) The 1999–2001 agreement was finalized and signed in January 2000. (*Id.* at 25.) The Union sent a letter to the District in April 2000, requesting the immediate revision of the ERIP due to potential ADEA violations. (*Id.* Ex. 11.)

an unfair employment practice for an employer, because of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, membership or activity in a local commission, disability, sex-

ual orientation, or age to ... discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn.Stat. § 363A.08, subd. 2(c).

The District replied that state law prohibited the re-opening of negotiations. (*Id.* Ex. 12.)

The Union and the District succeeded in amending the ERIP for the 2001–2003 Master Agreement, which was finalized in January 2002. (*See* Gillette Aff. Ex. 3 at 24–25.) The new agreement paid up to 105 days of accumulated disability leave to all eligible retirees over the age of 55. (*Id.*) All plaintiffs in this action retired under the old ERIP, however, and received less than the maximum early retirement benefits available under that ERIP. (*See* Skrien Aff. Ex. 12.) Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") in April 2000, June 2000, and early 2002, claiming age discrimination in the dispersal of benefits. (*Id.*) They obtained "right to sue" letters, and this litigation followed.

## ANALYSIS

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252, 106 S.Ct. 2505.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. *See id.* at 255, 106 S.Ct. 2505. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

### II. Standing

■ Defendant challenges plaintiffs' standing to bring an ADEA claim. A party invoking federal jurisdiction has the burden to establish standing by showing each of the following: (1) an "injury in fact" that is actual, concrete and particularized, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "The burden to show standing is not a mere pleading requirement, 'but rather an indispensable part of the plaintiff's case.'" *Delorme v. United States*, 354 F.3d 810, 815 (8th Cir.2004) (quoting *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130); *see also Raines v. Byrd*, 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) ("We have always insisted on strict compliance with this jurisdictional standing requirement.").

Defendant alleges that plaintiffs did not suffer an injury in fact because they could choose when to retire and how much early retirement pay they would receive. De-

fendant also points out that plaintiffs earned more in wages during the years they worked after age 55 than they would have received from early retirement payments. Second, defendant asserts that plaintiffs' injuries are not fairly traceable to defendant's conduct because any injury plaintiffs may have suffered was a result of their own retirement choices.

The Seventh Circuit entertained arguments identical to those defendant makes here. *See Solon v. Gary Cmty. Sch. Corp.,* 180 F.3d 844, 849–51 (7th Cir.1999). In *Solon,* plaintiffs challenged an ERIP that granted additional monthly benefits to eligible teachers retiring between the ages of 58 and 61. *Id.* at 846. Each plaintiff chose to continue working past age 58 and forego some or all of the monthly incentives provided for in the ERIP. *Id.* at 848. During the time worked past age 58, each plaintiff earned more in wages than he or she would have received in early retirement benefits. *Id.* at 850. However, the court found that the ERIP potentially granted fewer or no benefits to retirees over the age of 58 who had the same number of years of creditable service, same accumulated pension benefits, and were otherwise identically situated with their younger colleagues. *Id.* at 850. Despite plaintiffs having a choice of when to retire, the court found that plaintiffs suffered a concrete injury under the express terms of the ERIP "just as surely as they would if their age disqualified them from receiving performance bonuses, wage increases, or promotions." *Id.* at 850. Therefore, the court held that plaintiffs had standing to challenge their employer's early retirement incentive program. *Id.* at 850.

The same facts and arguments are at issue here. The challenged ERIP grants early retirement benefits to eligible teachers who retire between the ages of 55 and 64. Those teachers who retire after the age of 55, like plaintiffs, must forego early retirement benefits that are available to identically situated younger colleagues. Having a choice of when to retire does not change the fact that younger colleagues with the same number of years of service and the same pension benefits can receive greater early retirement benefits. Therefore, plaintiffs have standing to challenge the ERIP because they suffered a concrete injury by the ERIP's express terms.

## III. Statute of Limitations

■ Before bringing suit in federal district court for an alleged violation of the ADEA, the aggrieved employee must first file a claim with the EEOC. 29 U.S.C. § 626(d); 42 U.S.C. § 12117(a). A plaintiff alleging violations in a state like Minnesota that has a law prohibiting age discrimination in employment must file a claim with the EEOC within 300 days of the event giving rise to the claim. 29 U.S.C. § 626(d)(2); *see* Minn.Stat. § 363A.08. The administrative filing deadlines operate in the nature of a statute of limitations. "If a plaintiff fails to file a timely charge, the lawsuit is barred unless he or she can demonstrate that the limitations period is subject to equitable modification such as waiver, estoppel, or tolling." *Dring v. McDonnell Douglas Corp.,* 58 F.3d 1323, 1327 (8th Cir.1995) (addressing ADEA claims).

Defendant moves for summary judgment based in part upon some plaintiffs' failure to file timely charges with the EEOC.[3] Defendant alleges that plaintiffs Bangs, Jansen, Krause, Krohnberg, Maki, Morrison, Reis, Rennpferd, Thompson, Ur-

---

**3.** Defendant challenges the timeliness of charges filed by all plaintiffs except Overlie and Bogen.

bain and Zetah knew or should have known of defendant's alleged discrimination when they received letters in April 1999 regarding their early retirement benefit provisions. Defendant argues that the letters therefore marked the beginning of the 300 day limit. Because those plaintiffs who received a retirement benefits letter in April 1999 did not file charges until April 2000, defendant asserts that their claims are time barred. As to plaintiff Knudsen, defendant argues that a letter sent by plaintiff to the District in June 1999 indicated Knudsen's knowledge of his early retirement benefits. Because Knudsen did not file charges with the EEOC until June 28, 2000, defendant asserts that his claims are also time barred.

■■■ A recent Eighth Circuit holding renders defendant's arguments moot, however. The time limit for challenging an allegedly discriminatory retirement plan begins to run when the plaintiff retires and his or her retirement benefits vest. *Maki v. Allete, Inc.*, 383 F.3d 740, 745 (8th Cir. 2004). Plaintiffs Bangs, Jansen, Krause, Krohnberg, Maki, Morrison, Reis, Rennpferd, Thompson, Urbain and Zetah retired on June 14, 1999. (*See* Skrien Aff. Exh. 1.) Those plaintiffs filed charges with the EEOC by April 6, 2000. (*See* Skrien Aff. Exh. 12.) Therefore, they met the 300–day deadline. Plaintiff Knudsen retired on December 31, 1999, and filed charges with the EEOC on June 28, 2000, also within the statute of limitations. Because none of plaintiffs' claims are time barred, defendant's motion for summary judgment on that issue must be denied.

## IV. Right of the District to Contribution From the Union

Defendant filed a third-party complaint against the Union and alleges a right to contribution for any damages assessed against the District under the ADEA. Third-party defendant Union asserts, however, that the ADEA does not provide a right to contribution in favor of employers against labor unions. (*See* Mem. Supp. Third–Party Def.'s Mot. Summ. J. at 8–13.) The Union also argues that the plaintiff employees have no right of action against the Union, but even if they did, the District cannot assert that right on the employees' behalf. (*See id.* at 13–15.)

■■■ This court has held that unions may be liable to employees under the ADEA. *See EEOC v. Air Line Pilots Ass'n, Int'l*, 489 F.Supp. 1003, 1009 (D.Minn.1980), *rev'd on other grounds*, 661 F.2d 90 (8th Cir.1981). However, the court does not decide whether the Union is liable to plaintiffs in this matter because (1) plaintiffs have not brought a claim against the Union, and (2) the District cannot assert any alleged right of plaintiffs to do so. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 119 n. 14, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (an employer "cannot assert the right of [employees] to recover damages against the Union" for ADEA violations). Furthermore, any right plaintiffs have to recover from the Union does not establish the District's right to contribution. *See Northwest Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 88–89, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (plaintiff's right to recover from union under Equal Pay Act or Title VII does not establish employer's right to contribution). Therefore, the ADEA must support a separate right to contribution for the District to maintain its claim against the Union.

■■■ The ADEA does not expressly provide for a right to contribution. However, a court can recognize an implied cause of action for contribution if (1) Congress' intent to so provide can be inferred from the statute, or (2) the cause of action has "become a part of the federal common law through the exercise of judicial power

to fashion appropriate remedies for unlawful conduct." *Northwest Airlines,* 451 U.S. at 90, 101 S.Ct. 1571.

## A. Congressional Intent

■ The District argues that congressional intent supports a right to contribution under the ADEA. "The ultimate question ... is whether Congress intended to create the private remedy—for example, a right to contribution ...." *Northwest Airlines,* 451 U.S. at 91, 101 S.Ct. 1571. To determine whether Congress intended to include a right to contribution in the ADEA, the court must look to (1) statutory language, (2) legislative history, (3) the underlying purpose and structure of the ADEA, and (4) the likelihood that Congress intended to supersede or supplement existing state remedies. *Id.* at 91, 101 S.Ct. 1571.

### 1. Statutory Language

The lack of an express right to contribution in the ADEA is not dispositive if, among other things, the statutory language indicates that it was enacted "for the special benefit of a class of which petitioner is a member." *Id.* at 91–92, 101 S.Ct. 1571. In *Northwest Airlines,* the Supreme Court held that "it cannot possibly be said that employers are members of the class for whose especial benefit either the Equal Pay Act or Title VII was enacted." *Id.* at 92, 101 S.Ct. 1571. The ADEA, like the Equal Pay Act and Title VII, regulates the conduct of employers for the benefit of employees. *See id.* at 92, 101 S.Ct. 1571. Like the statutes addressed in *Northwest Airlines,* the ADEA also expressly prohibits unions from causing or attempting to cause an employer to discriminate against employees in violation of the Act. 29 U.S.C. § 623(c)(3). Even if this language implies a remedy for harm to an employer caused by union conduct, "[s]uch a remedy ... would be entirely different from a right to compel the union to share the responsibility for a joint violation of a third party's rights." *Northwest Airlines,* 451 U.S. at 93, 101 S.Ct. 1571. Instead, the District "can scarcely lay claim to the status of 'beneficiary' whom Congress considered in need of protection." *Id.* at 92, 101 S.Ct. 1571 (internal quotations omitted) (citing *Piper v. Chris-Craft Indus., Inc.,* 430 U.S. 1, 37, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977)). Therefore, the statutory language of the ADEA does not imply a right of employers to contribution.

The District disputes this conclusion and argues that language within the ADEA supports a right to contribution by authorizing courts "to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter." 29 U.S.C. § 623(b). (*See* Def. Mem. Opp'n Third–Party Def.'s Mot. Summ. J. at 12.) Notably, the purposes of the chapter do not include protecting or compensating employers. *See* 29 U.S.C. § 621(b). Rather, the ADEA gives examples of legal or equitable relief that would effectuate the chapter's purposes "including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section." 29 U.S.C. § 623(b). Neither the granting of additional remedies nor the examples of remedies given imply any benefit or remedies for employers. The District's argument is therefore without merit.

### 2. Legislative History

The parties acknowledge that the legislative history of the ADEA provides no indication of whether Congress intended to include a right to contribution. Therefore, to find an implied right to contribution, the congressional intent to do so must be inferred from the statutory language, struc-

ture, or some other source. *Northwest Airlines,* 451 U.S. at 94, 101 S.Ct. 1571.

### 3. Purpose and Structure

■ If a statute contains comprehensive remedial schemes and express provisions for private or governmental enforcement in carefully defined circumstances, then the federal judiciary should avoid adding another private remedy not expressly authorized by Congress. *See Northwest Airlines,* 451 U.S. at 93–94, 101 S.Ct. 1571. The Supreme Court held in *Northwest Airlines* that the structure and purpose of the Equal Pay Act and Title VII do not support an implied right to contribution because the statutes already have specific and comprehensive remedial schemes. *Id.* at 94–95, 101 S.Ct. 1571.

Similar to the Equal Pay Act and Title VII, the ADEA contains a specific and comprehensive enforcement program. The ADEA requires enforcement of its provisions under the comprehensive remedial structure of the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 626 (referring to sections 211(b), 215, 216, and 217 of FLSA); *Lamon v. City of Shawnee,* 972 F.2d 1145, 1149 (10th Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993). The ADEA's incorporation of such a comprehensive scheme counsels against recognition of an implied right of action. *Cf. Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1102 (8th Cir. 1982) (declining to find remedies available under the ADEA that are not available under FLSA). Furthermore, all the additional remedies explicitly granted under the ADEA focus on an employee's right of action and therefore do not indicate the

intent of Congress to provide for any right by employers to contribution.[4]

### 4. Supersede or Supplement State Remedies

Because neither the statutory language nor the legislative history of the ADEA reveals the congressional intent to create a right to contribution for the benefit of the defendant District, the court need not carry the inquiry further. *See Northwest Airlines,* 451 U.S. at 95 n. 31, 101 S.Ct. 1571.

### B. Federal Common Law

■ Although the ADEA does not provide for an express or implied private right of action for the benefit of employers, the Supreme Court has recognized a judicial responsibility "to fashion federal common law in cases raising issues of uniquely federal concern." *Northwest Airlines,* 451 U.S. at 95, 101 S.Ct. 1571. However, once Congress addresses a subject, the lawmaking authority of federal courts is "greatly diminished." *Id.* at 95 n. 34, 101 S.Ct. 1571. When Congress enacts a comprehensive remedial scheme with procedures for enforcement, there is a strong presumption that the omission of remedies is deliberate. *Id.* at 97, 101 S.Ct. 1571 (Equal Pay Act and Title VII deliberately omit remedies). Notably, the Supreme Court has never recognized a general federal right to contribution. *Northwest Airlines,* 451 U.S. at 96–97, 101 S.Ct. 1571.

Nothing in the language or structure of the ADEA suggests that Congress intended federal courts to fashion common law remedies for employers. Much like the

---

4. Defendant argues that because the ADEA prohibits unions from discriminating or causing an employer to discriminate on the basis of age, recognizing a right to contribution would effectuate the purposes of the ADEA. *See* Def. Mem. Opp'n Third–Party Def.'s Mot.

Summ. J. at 13–14. However, accepting defendant's argument would allow employers to assert the rights of employees to recover damages against unions, which is not allowed. *See Trans World Airlines,* 469 U.S. at 119 n. 14, 105 S.Ct. 613.

Equal Pay Act and Title VII at issue in *Northwest Airlines,* the ADEA's comprehensive legislative scheme focuses only on redressing the injuries of plaintiff employees. The Act's remedial structure and language strongly suggest that Congress deliberately omitted a right to contribution. Therefore, "[t]he judiciary may not . . . fashion new remedies that might upset carefully considered legislative programs." *Northwest Airlines,* 451 U.S. at 97, 101 S.Ct. 1571.

Because the court grants the Union's motion for summary judgment based on the absence of a right to contribution,[5] the Union's remaining arguments for summary judgment are moot.

## V. ADEA and MHRA Claims

Plaintiffs seek summary judgment on defendant's liability under the ADEA and MHRA, as well as defendant's willful violation of the ADEA. Defendant seeks summary judgment on plaintiffs' failure to establish a prima facie case of age discrimination and, alternatively, applicability of affirmative defenses under the ADEA. Should the court hold defendant liable for ADEA violations, defendant argues that it did not willfully violate the ADEA and that the offending ERIP within the collective bargaining agreement should be severed.[6]

## A. Prima Facie Case of Discrimination [7]

■ Plaintiffs claim that they received declining incentive payments for early retirement based on their age in violation of the ADEA and the MHRA. Age discrimination claims under the MHRA are considered under the same analysis as claims under the ADEA. *Chambers v. Metro. Prop. & Cas. Ins. Co.,* 351 F.3d 848, 855 (8th Cir.2003); *see Hoover v. Norwest Private Mortg. Banking,* 632 N.W.2d 534, 542 (Minn.2001). The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *EEOC v. Liberal R–II Sch. Dist.,* 314 F.3d 920, 922 (8th Cir.2002). An employer also may not discriminate with respect to any employee benefits, "including such benefits provided pursuant to a bona fide employee benefit plan." 29 U.S.C. § 630(l).

To establish a claim for disparate treatment under the ADEA, plaintiffs bear the initial burden of showing that the employee's age actually motivated the employer's decision. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

**5.** This conclusion is consistent with the Supreme Court's opinion in *Northwest Airlines,* where the Court held that employers have no right to contribution from unions under the employment discrimination statutes of the Equal Pay Act and Title VII. 451 U.S. at 98, 101 S.Ct. 1571.

**6.** Defendant has withdrawn its Eleventh Amendment immunity argument. (*See* Def.'s Mem. Opp'n Pls.' Mot. Summ. J. at 14.)

**7.** Defendant admits that "Plaintiffs have satisfied their burden of producing direct evidence" of age discrimination. (Def.'s Mem. Supp. Mot. Summ. J. at 19.) However, defendant argues in the same brief that "Plaintiffs cannot prove discriminatory motive on the part of the District," citing authority that speaks to a plaintiff's prima facie case of discrimination. (*Id.* at 25.) Based upon the pleadings, briefs and oral arguments, the court understands defendant to challenge plaintiffs' ability to establish a prima facie case of discrimination.

Other federal courts have held that plaintiffs successfully establish a prima facie case of age discrimination when they show that early retirement incentive benefits varied on the basis of age. *See Solon*, 180 F.3d at 852–53; *Auerbach v. Bd. of Educ.*, 136 F.3d 104, 109–10 (2d Cir.1998); *cf. Lyon v. Ohio Educ. Ass'n*, 53 F.3d 135, 139–40 (6th Cir.1995) (early retirement benefits based on both years of service and age did not establish prima facie case of age discrimination).

Plaintiffs have established a prima facie case of age discrimination by showing that the challenged ERIP discriminated on the basis of age on its face. *See Int'l Union v. Johnson Controls, Inc.*, 499 U.S. 187, 199, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991) (facially discriminatory policy establishes a claim of disparate treatment). Specifically, the ERIP calculated the percentage of accumulated disability leave a retiree could receive based entirely on the retiree's age. (*See* Pls.' Mem. Supp. Mot. Summ. J. at 2–3 & 13.) Defendant alleges that plaintiffs fail to establish a prima facie case because they have not shown that the District had an improper motive or intended to discriminate based on age. (*See* Def.'s Mem. Supp. Mot. Summ. J. at 22.) However, "[w]hether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination." *Int'l Union*, 499 U.S. at 199, 111 S.Ct. 1196. Any allegedly benign intent behind the facial age discrimination of the ERIP does "not alter the intentionally discriminatory character of the policy." *Id.* at 199, 111 S.Ct. 1196. Therefore, defendant's argument fails.

## B. Affirmative Defense

Defendant did not plead in its answer any affirmative defenses to its alleged violations of the ADEA. Both parties have nonetheless addressed defendant's potential affirmative defenses in their briefs and arguments. Defendant asks this court to grant it leave to amend should the failure to plead its defenses be fatal to its claims. (Def.'s Reply Mem. Supp. Mot. Summ. J. at 4.) However, "[a] motion to amend should be denied if the party's amendment clearly will not succeed on the merits." *EEOC v. Hickman Mills Consol. Sch. Dist. No. 1*, 99 F.Supp.2d 1070, 1079 (W.D.Mo.2000) (affirmative defenses to a facially discriminating ERIP were meritless), *citing Buder v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 644 F.2d 690, 695 (8th Cir.1981). Because defendant's affirmative defenses are meritless, leave to amend is denied.

The ADEA, as amended by the Older Workers' Benefit Protection Act of 1990 (OWBPA), allows an employer to observe the terms of an ERIP if it is voluntary and consistent with the relevant purpose or purposes of the ADEA. 29 U.S.C. § 623(f)(2)(B)(ii). The purposes of the ADEA are "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). Early retirement incentive plans are generally lawful if they are truly voluntary, made available for a reasonable period of time and do not lead to arbitrary age discrimination. S.Rep. No. 101–263, at 28 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1533; *see also Auerbach v. Bd. of Educ.*, 136 F.3d 104, 112–13 (2d Cir.1998). ERIPs that provide all eligible retirees a flat dollar amount, service-based benefits, or a percentage of salary are consistent with the purposes of the ADEA. S.Rep. No.

101–263, at 28 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1533.

 The parties agree that the ERIP offered to plaintiffs was voluntary. (*See, e.g.,* Pls.' Mem. Supp. Summ: J. at 17.) The undisputed facts also show that defendant made the ERIP available for a reasonable period of time. The ERIP was not consistent with the purposes of the ADEA, however, because it results in arbitrary age discrimination. In particular, the ERIP offers incentive benefits that differ in amount for eligible employees based solely on the retiree's age. Like the ERIPs found unlawful in *Hickman Mills,* the District's ERIP "is inconsistent with the purposes of the ADEA because it is not based on factors other than age." *Hickman Mills,* 99 F.Supp.2d at 1079; *see also Auerbach,* 136 F.3d at 114 (an ERIP that offers reduced benefits to older retiree plan participants conflicts with the ADEA's purpose of prohibiting arbitrary age discrimination).

Defendant argues that the declining benefits of the ERIP are consistent with the purposes of the ADEA because they are intended to provide early retirees a means to pay for family health insurance until Medicare begins at age 65. (*See* Def.'s Mem. Supp. Summ. J. at 22.) However, Congress has already provided for an employer's intent to supplement health care costs until a retired employee is eligible for old-age insurance benefits. The ADEA allows a benefit plan to provide retirees with social security supplements "that *commence* before the age and *terminate* at the age (specified by the plan) when participants are eligible to receive reduced or unreduced old-age insurance benefits." 29 U.S.C. § 623(1)(1)(B)(ii) (emphasis added).

The ERIP at issue does not conform to the exception for bridge payments because it does not provide payments that "commence" at retirement and "terminate" at the age of Medicare availability. *See* S.Rep. No. 101–263, at 21 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1526 ("Typically, a social security bridge payment is a fixed monthly payment ...."). Rather, the ERIP provides early retirees a lump sum payment that differs according to age.[8]

For all of the above reasons, the ERIP violates the ADEA, and defendant's alleged affirmative defenses do not apply.

## C. Willful Violation

 Plaintiffs allege that defendant willfully violated the ADEA, entitling the employees to liquidated damages. *See* 29 U.S.C. § 626(b). A violation of the ADEA is willful if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Thurston,* 469 U.S. at 126, 105 S.Ct. 613 (1985) (internal quotation marks and ellipsis omitted); *Spencer v. Stuart Hall Co.,* 173 F.3d 1124, 1129 (8th Cir. 1999). A violation is not willful "if the employer simply knew of the potential applicability of the ADEA." *Thurston,* 469 U.S. at 127, 105 S.Ct. 613.

 Viewing the facts in this case in a light most favorable to defendant, its violation of the ADEA was not willful. The unlawful ERIP was the result of eight months of negotiation between the District and the Union. (Gillette Aff. Ex. 13.) Defendant asserts that many other school districts had similar ERIPs in place at that time. During negotiations, both the District and the Union proposed alterna-

---

8. The ERIP allows a retiree to opt for annual installments instead of a lump sum payment, but does not specify when such payments commence or terminate. Plaintiffs also point out that the incentive payments would have to double to cover the actual costs of health care. (*See* Williams Dep. at 18.)

tives to the ERIP that did not provide declining incentive benefits based on age. (*See* Williams Dep. at 31; Gillette Aff. Ex. 6.) Defendant alleges that it consulted with and relied upon its legal counsel regarding the legality of the ERIP. (*See* Williams Dep. at 37, 40.) While the case law regarding age-based ERIPs is fairly consistent, many circuits have not addressed the issue, including the Eighth Circuit. This evidence shows that the District may have known of the potential applicability of the ADEA, but did not show reckless disregard for that possibility.

■■■ Plaintiffs dispute the fact that defendant offered a viable alternative to the ERIP and that defendant relied upon its counsel. Plaintiffs also characterize defendant's response to the Union's ADEA concerns as "flippant." These are disputed material facts that speak to whether defendant acted in reckless disregard of potential ADEA violations.[9] Summary judgment on the issue of defendant's willful violation of the ADEA is therefore inappropriate.

### D. Severance

■■■ Defendant argues that should the court find the early retirement provisions of the 1999 CBA unlawful, the provisions must be excluded pursuant to the severance provision of Article XXIII of the agreement. The severance clause states:

> The provisions of this Agreement shall be severable, and if any provision thereof or the application of any such provision under any circumstances is held invalid, it shall not affect any other provisions of this Agreement or the application of any provision thereof.

(Gillette Aff. Ex. 2 at 25.) Defendant asserts that severance would result in plain-tiffs receiving no early retirement benefits under the agreement.

Contrary to defendant's argument, the extensive remedial provisions of the ADEA cannot be waived by such a vague and isolated severance clause. *See* 29 U.S.C. § 626(f); *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427–28, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (employees may not waive ADEA claims unless the waiver satisfies the requirements of OWB-PA); *see also Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 571 (7th Cir.1995) (the court must inquire beyond state contract law requirements to determine validity of waiver of ADEA rights); *Watkins v. Scott Paper Co.*, 530 F.2d 1159, 1172 (5th Cir.1976) (declining to "allow a rule of contract law to play too salient a part in the administration of a remedial civil rights statute"). Plaintiffs have established that they have suffered unlawful age discrimination and can therefore avail themselves of the ADEA remedial provisions. *See* 29 U.S.C. § 626(b).

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion for partial summary judgment [Docket No. 30] is granted in part.

2. Defendant's motion for summary judgment [Docket No. 13] is denied.

3. Third party defendant's motion for summary judgment [Docket No. 12] is granted.

---

9. Furthermore, plaintiffs' allegations relate only to the negotiations surrounding the ERIP in the 1999–2001 agreement. However, only plaintiffs Bogen, Knudsen and Overlie retired pursuant to that agreement, whereas the remaining plaintiffs retired under the earlier 1997–1999 agreement. (*See* Skrien Aff. ¶¶ 3–5.)